IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH MARTIN,<br>　　　　　Plaintiff | : No. 3:20cv330<br>:<br>: (Judge Munley) |
| v. | : |
| HARVEYS LAKE BOROUGH, and<br>Council President MICHELLE BOICE<br>in her individual capacity,<br>　　　　　Defendants | :<br>:<br>:<br>: |

## MEMORANDUM

Before the court is the motion for summary judgment (Doc. 33) filed by Defendants Harveys Lake Borough and Michelle Boice in this action brought pursuant to 42 U.S.C. § 1983 ("Section 1983") for the alleged violation of Plaintiff Elizabeth Martin's First Amendment rights. Having been fully briefed, this matter is ripe for disposition.[1]

**Background[2]**

Per the operative amended complaint, plaintiff alleges that she was terminated as Harveys Lake Borough's secretary-treasurer based on her political

---

[1] The Honorable Robert D. Mariani transferred this case to the undersigned on November 7, 2023.

[2] All facts are construed in a light most favorable to plaintiff as the nonmoving party. See Daniels v. Sch. Dist. of Philadelphia, 776 F.3d 181, 187 (3d Cir. 2015)(citation omitted).

non-affiliation. (Doc. 9). Plaintiff contends that she was terminated in January 2020 after the borough council reorganized and Defendant Boice became council president. (Id. at ¶¶ 13-20).

Defendant Harveys Lake Borough is a municipality in Luzerne County, Pennsylvania. Plaintiff was hired in July 2018 as an assistant secretary. (Doc. 31, Dep. of E. Martin, 8:8-9:5). Her hiring was approved through a majority vote of council at a public meeting. (Id. at 9:14-11:23). Plaintiff was then hired as the borough's secretary-treasurer in November 2019 after a similar process. (Id. at 12:16-13:12). Per plaintiff, a group of councilmembers headed by Daniel Blaine constituted the majority of borough council when she was hired. (See id. at 17:18-23). Defendant Boice was in the local political minority at the time. (Id. at 18:4-6). Blaine was a Republican; Defendant Boice was a Democrat. (Id. at 20:6-12).

Prior to working for Defendant Harveys Lake Borough, plaintiff was a member of the board of supervisors in nearby Dallas Township before losing her bid for reelection. (Id. at 8:22-9:2). Per plaintiff, throughout her employment with Harveys Lake Borough, she made it clear to councilmembers that her politics were focused in Dallas Township where she resides. (Id. at 19:12-21). Despite also identifying as a Democrat, plaintiff advised Defendant Boice on several occasions that she wished to remain apolitical. (Id. at 19:13-21, 22:12-15, 24:11-

2

21, 39:21-40:6, 41:15-42:7). Defendant Boice, however, leveled accusations toward plaintiff from her first day at work, believing plaintiff was aligned with the other faction because they hired plaintiff when they were in the majority on council. (Id. at 19:6-20:25, 22:16-21). According to plaintiff's testimony, Defendant Boice assumed incorrectly that plaintiff was taking sides in the political differences of the borough. (See Id. at 19:13-21). Because of these suspicions, plaintiff felt that Defendant Boice questioned her work for the borough and regularly addressed her in a degrading, demeaning way. (Id. at 21:7-21).

In January 2020, Defendant Boice was installed as borough council president by a new majority after municipal elections. (Id. at 36:15-17, 64:1-3). Plaintiff testified that Defendant Boice, at that point, began micromanaging plaintiff's duties. (See id. at 36:22-38-25). Per plaintiff, all of plaintiff's work had to be approved by Defendant Boice and explained in great detail to Boice and other members of the political majority. (Id. at 36:22-37:15). Otherwise, plaintiff would face sharp, intense questioning from Defendant Boice. (Id. at 38:10-25).

On January 21, 2020, plaintiff submitted a letter of resignation with a departure date of February 3, 2020. (Doc. 23-1). According to plaintiff, she tendered her resignation because an opportunity arose for her to return to publishing at a local magazine as an account executive. (Doc. 31 at 43:17-44:19). At a meeting that same day, borough council accepted plaintiff's

3

resignation letter "with regret," per its meeting minutes. (Doc. 23-2). Plaintiff testified that Defendant Boice was unhappy because plaintiff was only giving the borough two weeks' notice and the previous secretary stayed on for three additional months to train plaintiff as her replacement. (Doc. 31 at 45:19-46:8). Another council member appealed to plaintiff to stay on longer and plaintiff testified that she agreed to stay until February 10, 2020 full-time and then part-time through the end of February. (Id. at 46:9-21). Plaintiff assumed that there would be a special meeting to approve the extension. (Id. at 67:3-12). But, it appears from the record that the extension was never approved.

On January 30, 2020, several days before the effective date of plaintiff's resignation, Defendant Boice interviewed plaintiff's replacement with two other majority council members. (Id. at 49:11-50-5). Within an hour of the interview, plaintiff was called into the conference room where she was confronted over unpaid invoices. (Id. at 50:14-51:5). Per plaintiff, Defendant Boice would not let her explain the circumstances and the confrontation "got to a fever pitch" with Boice screaming at plaintiff. (Id. at 51:7-24). Plaintiff testified:

> I finally just said, "That's it, I can't talk to you." And she was still screaming. And I just – I said, if you don't appreciate the way that I've been training to do my job and you don't want to listen to me, then maybe I shouldn't be here. I never said I quit.

(Id. at 51:23-53:3).

4

Plaintiff testified that Defendant Boice then stood up and screamed at plaintiff, "[g]et the fuck out of my building" while pointing to the door. (Id. at 52:4-6). Plaintiff left the room and returned to her office. (Id. at 52:19-53:11). Plaintiff testified that Defendant Boice then followed another councilmember to plaintiff's office and screamed at him to get plaintiff's keys. (Id. at 53:5-11). Prior to leaving the building, plaintiff and Defendant Boice exchanged barbs over whether plaintiff quit or was fired. (Id. at 53:9-11). Subsequently, plaintiff departed the borough building. (Id. at 53:12-13). As discussed below, the only official action from borough council regarding plaintiff's employment status during a council meeting was the acceptance of plaintiff's resignation letter with the indication that plaintiff's last day would be February 3, 2020.

Plaintiff alleges that the conduct of defendants in terminating her prior to February 3, 2020, violated her First Amendment right not to be politically affiliated. After a period of discovery, defendants filed the instant motion for summary judgment, bringing this case to its present posture.

**Jurisdiction**

As this case is brought pursuant to Section 1983 for constitutional violations, the court has jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution,

laws, or treaties of the United States."). Furthermore, the court has jurisdiction pursuant to 28 U.S.C. § 1343(a).

**Standard of Review**

Granting summary judgment is proper " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " See Knabe v. Boury Corp., 114 F.3d 407, 410 n. 4 (3d Cir.1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the

burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories to show that there is a genuine issue for trial. Id. at 324.

**Analysis**

Defendants seek summary judgment in their favor in this Section 1983 action.  Section 1983 does not, by its own terms, create substantive rights.  Rather, it provides remedies for deprivations of rights established elsewhere in the Constitution or federal law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir.1996). Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress....

42 U.S.C. § 1983.  Thus, to establish a claim under Section 1983, two criteria must be met. First, the conduct complained of must have been committed by a

7

person acting under color of state law. Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir.1998). Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law. Id.

A municipality may be liable under Section 1983 "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." Connick v. Thompson, 563 U.S. 51, 60 (2011)(citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)(internal quotation marks removed). However, the Supreme Court has rejected attempts to hold municipalities liable under theories of *respondeat superior*. See Monell, 436 U.S. at 694. As discussed further below, a local government may not be sued under Section 1983 for an injury solely inflicted by its employees or agents. Id. Rather, "it is when execution of a government's policy or custom. . .inflicts the injury that the government as an entity is responsible under [Section] 1983." Id.

Defendants move for summary judgment on three grounds. First, they argue that plaintiff has failed to establish the elements of her claim under Section 1983. Defendants also contend that Defendant Harveys Lake Borough is entitled to summary judgment based upon Monell and subsequent case law clarifying the boundaries of municipal liability for alleged civil rights violations. Finally, defendants argue that Defendant Boice is individually entitled to summary judgment because she did not have the authority to terminate plaintiff absent

8

action by council at a public meeting through a majority vote. These arguments are addressed below in the order raised by defendants.

### 1. Plaintiff's First Amendment Claim Generally

Plaintiff alleges her constitutional rights were violated because she was terminated for not picking a side in the politics of Harveys Lake Borough and because Defendant Boice believed plaintiff was aligned with the past political majority.

"The First Amendment generally prohibits government officials from dismissing . . . an employee because of the employee's engagement in constitutionally protected political activity." Heffernan v. City of Paterson, N.J., 578 U.S. 266, 268 (2016)(citing Elrod v. Burns, 427 U.S. 347 (1976); Branti v. Finkel, 445 U.S. 507 (1980)) (further citation omitted). The First Amendment protects government employees who lack political affiliation from political patronage discrimination. Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 268 (3d Cir. 2007). Moreover, where an employer adversely acts against an employee "out of a desire to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983—even if . . . the employer makes a factual mistake about the employee's behavior." See Heffernan, 578 U.S. 266, 273 (discussing demotion of an employee).

9

In her amended complaint, plaintiff premises her claim under Galli.[3] (Doc. 9 at ¶ 21). Galli sets forth a three-part test to establish a claim of wrongful discharge based on political patronage. 490 F.3d at 271. To make a *prima facie* case, plaintiff must show that: 1) she was employed at a public agency in a position that does not require political affiliation; 2) she was engaged in constitutionally protected conduct; and 3) this conduct was a substantial or motivating factor in the government's employment decision. Id. (citation omitted).

Defendant argues that plaintiff cannot set forth evidence on the element of protected activity. (Doc. 22 at 5). Constitutionally protected activity, however, is broad enough to encompass the apolitical employee. See Delhagen v. McDowell, 703 F. Supp. 2d 467, 475 (M.D. Pa. 2010)(Vanaskie, J). As in Delhagen, plaintiff has come forward with sufficient facts from which a reasonable jury could conclude that she either decided to be apolitical, aligned herself with the previous majority, or failed to sufficiently support the new majority. All of these positions are protected. See Galli, 490 F.3d at 272-73.

As to the third element, however, there is a requirement that plaintiff produce sufficient evidence of the defendants' knowledge of plaintiff's political

---

[3] Plaintiff's amended complaint specifically cites Galli. Defendants, however, brief this issue as a First Amendment retaliation claim, which requires a plaintiff prove: 1) that she engaged in constitutionally-protected activity; 2) that the government responded with retaliation; and 3) that the protected activity caused the retaliation. See Miller v. Mitchell, 598 F.3d 139, 147 (3d Cir. 2010). The court will proceed using the elements set forth in Galli.

persuasion and proof of causation. Id. at 275 (citation omitted). Thus, plaintiff must produce evidence tending to show that borough council knew she was apolitical or that she did not support the majority and then borough council fired her as a result. Id. (citation omitted). Defendants argue that borough council did not make an adverse employment decision or take any action other than accept plaintiff's resignation on January 21, 2020. Thus, they argue, plaintiff cannot establish causation to prove liability against the municipality and Defendant Boice. The court will address the arguments as to plaintiff's claims against Harveys Lake Borough and then Defendant Boice.

### 2. Plaintiff's Claim Against Defendant Harveys Lake Borough

In challenging plaintiff's claim, defendants focus on Defendant Boice's inability to decide plaintiff's employment status because only borough council could do so. Plaintiff counters that she has produced sufficient evidence that Defendant Boice supervised plaintiff's work as the president of borough council and the rest of borough council acquiesced in Boice's conduct.

"[I]n Monell, the Court held that 'a municipality cannot be held liable' solely for the acts of others, e.g., 'solely because it employs a tortfeasor.' But the municipality may be held liable 'when execution of a government's policy or custom ... inflicts the injury.'" Los Angeles Cty., Cal. v. Humphries, 562 U.S. 29, 36, (2010)(quoting Monell, 436 U.S. at 691, 694)(emphasis removed).

Importantly, "[a] municipality may be held liable pursuant to 42 U.S.C. § 1983 only if a plaintiff is able to identify such a policy or custom." Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 761 (3d Cir. 2019)(citation omitted).

Plaintiff has not identified a borough custom in her opposition to summary judgment to show that the Harveys Lake Borough council president had the authority to unilaterally fire borough officers. Under Monell, a custom cannot usually be established by a one-time occurrence. Solomon v. Philadelphia Hous. Auth., 143 F. App'x 447, 457 (3d Cir. 2005)(citing Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985)). Thus, the court focuses on whether plaintiff has identified a borough policy that inflicted her alleged injury.

"Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403–04 (1997)(citing Monell, 436 U.S. at 690-91). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 61 (2011)(citations omitted). A policy need not be passed by a legislative body, or even be in writing, to constitute an official policy; a pertinent decision by an official with decision-making authority on the subject constitutes an official

policy. Porter v. City of Philadelphia, 975 F.3d 374, 383 (3d Cir. 2020)(citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986)). Moreover, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances[,]" but liability only attaches "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur, 475 U.S. at 480-81 (footnote omitted). "The question of who is a 'policymaker' is a question of state law." Andrews v. City of Philadelphia, 895 F.2d 1469, 1481 (3d Cir. 1990)(citing City of St. Louis v. Praprotnik, 485 U.S. 112, 142 (1988)). Moreover, "[p]roving that a municipal official is a final policymaking authority is a fundamental element" of a Section 1983 action. LaVerdure v. Cty. of Montgomery, 324 F.3d 123, 126 (3d Cir. 2003)

In order to ascertain policymaking authority, "a court must determine which official had final, unreviewable discretion to make a decision to take action." Kneipp, 95 F.3d at 1213. Here, this matter involves the alleged early termination of a "secretary-treasurer" from a borough. Municipalities such as Harveys Lake Borough derive their powers from Pennsylvania's Borough Code, 8 PA. CONS. STAT. § 101, *et seq.* Generally, the Borough Code calls for governance by a borough council. 8 PA. CONS. STAT. §§ 801-818, 1001-1086. Under Pennsylvania law, a borough council has the power to appoint a secretary and a treasurer, and

13

with some exception, those officers "shall serve for an indefinite term at the pleasure of council." See 8 PA. CONS. STAT. § 1005(1). The Borough Code further provides that "all powers" of council "shall be exercised by vote of the majority of council eligible to vote at a meeting." 8 PA. CONS. STAT. § 1006(4). These two statutes, when read together, establish that borough secretaries and borough treasurers can only be appointed or discharged upon the majority vote of a borough council. Since only a majority of borough council could discharge plaintiff under Pennsylvania law, Defendant Boice could not serve as the final policymaker on when plaintiff was to stop working.[4]

Plaintiff believes she was terminated based on the statements of Defendant Boice and because borough council did not stop Defendant Boice or otherwise act to retract her statements to plaintiff. In her brief in opposition, it appears that plaintiff is arguing that Defendant Boice's actions were ratified by a majority of borough council.

A municipality "will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for

---

[4] Whether Defendant Boice is a final policymaker is a legal question rather than a factual question. See Santiago v. Warminster Twp., 629 F.3d 121, 135, n. 11 (3d Cir. 2010)(citing Praprotnik, 485 U.S. at 124). "Moreover, the Supreme Court has forbidden courts from 'assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it.'" Id. (citing Praprotnik, 485 U.S. at 125, n. 1). The court is not persuaded by plaintiff's references to Brown v. Mincey, 2012 WL 6761873 (D.N.J. Dec. 31, 2012), as that matter involved the municipal law of New Jersey and stipulated facts on a motion to dismiss.

liability purposes." McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005)(citing Praprotnik, 482 U.S. at 127). Ratification occurs "only 'when a subordinate's decision is subject to review by the municipality's authorized policymakers [because] they have retained the authority to measure the official's conduct for conformance with their policies.' " Kelly v. Borough of Carlisle, 622 F.3d 248, 264 (3d Cir. 2010)(citing Praprotnik, 485 U.S. at 127).

In this case, however, Defendant Boice was not a subordinate, but one elected official serving on a multi-member decision-making body. The statements of one council member cannot constitute policy unless it is demonstrated that council delegated its authority to that member to speak for council or acquiesced in the member's statements. See LaVerdure, 324 F.3d at 125 (3d Cir. 2003)(citing Praprotnik, 485 U.S. at 127)(holding that a county was not liable to a terminated employee under Section 1983 for disparaging remarks made by the chairman of a three-member board of county commissioners who could not make policy acting alone). As stated, "a decision-making body cannot be liable when less than a majority of its members act with an impermissible purpose." Watson v. Borough of Susquehanna, 532 F. App'x 233, 236 (3d Cir. 2013)(citing LaVerdure, 324 F.3d at 125-26).

Defendant Boice and three other councilmembers would have constituted a majority of the seven-member borough council.[5] (Doc. 23-2, Meeting Minutes 01/21/2020, Doc. 28, Dep. of D. Blaine at 9:18-22). For whatever reason, plaintiff did not depose Defendant Boice or the other members of the majority. The only councilmember deposed, Councilmember Blaine of the minority, explained that Defendant Boice had the unwavering support of three other councilmembers. (Doc. 28, Dep. of D. Blaine at 17:16-20). Per Blaine, "even though legally [plaintiff] was not fired that day, all we would have had to do is have another meeting, and it would have taken place." (Id.). No vote, however, actually took place. At the next public meeting, Defendant Boice was questioned by minority council members about her statements to plaintiff to leave the borough building, but Boice "would not even address it[,]" according to plaintiff. (Doc. 31 at 20:17-5). There is no record of any subsequent action by borough council related to plaintiff.

Per plaintiff, her claim must move forward because two other council members did not stand up to Defendant Boice during the confrontation and she later received a voicemail apology from one of the other members present at the

---

[5] See 8 PA. CONS. STAT. § 806(a)(4)(indicating that the electors of a borough may elect seven members of council in boroughs not divided into wards or as otherwise reduced to five or three members in boroughs with populations less than 3,000 after petition to the court of common pleas).

incident. (Doc. 36). The record reflects that three members of borough council including Defendant Boice were present at the time Boice told plaintiff to get out of the borough building. Per plaintiff, only two members of counsel were present at the time Defendant Boice told the other member to get plaintiff's keys. The councilmembers present at those times do not constitute a majority of borough counsel. At best, the record on summary judgment only reflects that a majority may have gone along with Defendant Boice if plaintiff's status was voted on in the four-day period between the incident and plaintiff's approved resignation date. But no meeting was scheduled, and no vote ever occurred. Thus, even when construing the record in a light most favorable to plaintiff, the evidence offered in opposition to summary judgment does not establish delegation, acquiescence, or that the majority of borough council otherwise adopted Defendant Boice's views as borough policy. Accordingly, for the reasons discussed above, summary judgment in favor of Harveys Lake Borough is appropriate here.

### 3. Plaintiff's Claim Against Defendant Boice

Plaintiff also sued Defendant Boice in her individual capacity as borough council president. (Doc. 9 at ¶ 3). In her brief in opposition to summary judgment discussing Defendant Boice's liability, plaintiff concedes that "any official liability would be liability on behalf of the municipality." (Doc. 33 at 12, n. 2).

As indicated, Defendant Boice could not have violated plaintiff's First Amendment rights acting alone. See Watson v. Borough of Susquehanna, No. 3:09-CV-294, 2012 WL 5249551, at *5 (M.D. Pa. Oct. 23, 2012)(Mariani, J.), aff'd, 532 F. App'x 233 (3d Cir. 2013)("if a Borough cannot be liable based on the improper actions of one of its members, neither can that individual be liable because his actions alone could not have effected any action against Plaintiff."). Consequently, summary judgment will also be granted regarding plaintiff's claims against Defendant Boice.

**Conclusion**

For the reasons set forth above, defendants' motion for summary judgment (Doc. 21) will be granted and the Clerk of Court will be directed to close this case. An appropriate order follows.

Date: 1/31/24

JUDGE JULIA K. MUNLEY
United States District Court